IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EMG TECHNOLOGY, LLC | § | |
| | § | |
| v. | § | No. 6:12cv259 |
| | § | (Consolidated—Lead Case) |
| CHRYSLER GROUP, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment of Invalidity for Indefiniteness (Doc. No. 125).[1] Also before the Court are Plaintiff's response (Doc. No. 128) and Defendants' reply (Doc. No. 133). Having considered the briefing and all relevant papers and pleadings, the Court finds that Defendants' motion (Doc. No. 125) should be **DENIED**.

## I. BACKGROUND

This is a patent infringement suit. Plaintiff alleges infringement of U.S. Patent No. 7,441,196 ("the '196 Patent") by Defendants Google, Inc., Expedia, Inc., and Costco Wholesale Corporation. The '196 Patent, titled "Apparatus and Method of Manipulating a Region on a Wireless Device Screen for Viewing, Zooming and Scrolling Internet Content," was filed on March 13, 2006, and issued on October 21, 2008. The '196 Patent is a continuation of U.S. Patent No. 7,020,845 ("the '845 Patent"), which is a continuation-in-part of U.S. Patent No. 6,600,497 ("the '497 Patent").

In general, the '196 Patent relates to providing a simplified navigation interface for a web page. The Abstract of the '196 Patent states:

> A method and apparatus of simplified navigation. A web page is provided having a link to a sister site. The sister site facilitates simplified navigation. Pages from

---

[1] References to docket numbers herein shall be to Case No. 6:12-CV-259 unless otherwise indicated.

the sister site are served responsive to actuation of the sister site link. In one embodiment, the sister site includes matrix pages to permit matrix navigation.

The Court has previously found that the term at issue, "simplified navigation interface," does not render the claims of the '196 Patent indefinite. *EMG Tech., LLC v. Dr. Pepper Snapple Group Inc.*, No. 6:10-CV-536, 2012 WL 3263588, Doc. No. 311, slip op. at 14–16 (Aug. 8, 2012) (Davis, J.) ("*Dr. Pepper*").

## II. LEGAL STANDARD

Claim indefiniteness is a legal determination that arises from the Court's duty to construe claims. *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). "In the face of an allegation of indefiniteness, general principles of claim construction apply." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005). The test for indefiniteness is whether a person of ordinary skill in the art would understand all of the language in the claims—that is, understand what is claimed—when they are read in light of the specification. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1346 (Fed. Cir. 2007); *see also Morton Int'l Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993). If the skilled artisan would understand the bounds of the claim when read in light of the specification, then the claim satisfies the definiteness requirement of 35 U.S.C. § 112, ¶ 2. The definiteness requirement does not mandate absolute clarity. The proper inquiry is whether the terms can be given any reasonable meaning, and a difficult issue of claim construction does not automatically require a finding of indefiniteness. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Even if the claim construction effort is a tough one, when the meaning of the claim is discernible, the claim is not indefinite. *Id.*

## III. THE PARTIES' POSITIONS

### A. Defendants' Motion

Defendants rely primarily upon a purported failure by the U.S. Patent and Trademark Office ("PTO") to consistently enforce the definiteness requirements of 35 U.S.C. § 112, ¶ 2, specifically by the different examiners that examined Plaintiff's various patent applications (*see* Doc. No. 125 at 2). Defendants urge that this and other evidence was not presented to the Court in *Dr. Pepper* and, therefore, the Court should not defer to the definiteness finding in *Dr. Pepper* (Doc. No. 125 at 2–3). In sum, Defendants argue that:

> The facially subjective nature of "simplified," the '196 patent's lack of objective criteria for determining whether an interface is or is not "simplified," the PTO's repeated rejection of claims for use of this exact same phrase in related applications, and the inability of the named inventors' to articulate what makes an interface "simplified" all support only one conclusion—namely, that this term renders all claims invalid as indefinite under 35 U.S.C. § 112, ¶ 2. To hold otherwise would reward Plaintiff for its strategic pursuit of ambiguous claims and leave Defendants and the public in a lawfully improper zone of uncertainty.

(Doc. No. 125 at 3).

At the June 20, 2013 hearing, Defendants argued that there is no clear prosecution history that the public can rely upon to understand the term "simplified navigation interface." Defendants emphasized that on three occasions in the prosecution history of patent applications related to the '196 Patent, a patent examiner rejected claims as indefinite because of the use of the term "simplified navigation interface," after which the patentee either deleted that language from the claims or abandoned the application altogether. Defendants concluded that because neither the specification nor the prosecution history explains the term "simplified navigation interface," the term renders the claims of the patent-in-suit indefinite.

As a general matter, the Court can consider the prosecution history of related patent applications. *Cf. Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.").

During prosecution of U.S. Patent Application No. 10/757,164 ("the '164 Application"), filed January 13, 2004, the examiner objected to application claim 10, which contained the phrase "simplified navigation interface" (5/11/2004 Office Action, Doc. No. 125-7 at 2). The patentee declined to amend the claim (8/11/2004 Amendment and Resp., Doc. No. 125-8). The examiner then stated:

> Claim 10 recites, a "simplified navigation interface". It is unclear how this is simplified. Simplified compared to what? Applicant argues that it is simplified compared to Microsoft Internet Explorer, but the specification fails to mention Internet Explorer. In fact that [sic] is nothing in the claims, specification, or arguments [to] explain just how this navigation interface is "simplified". It is simplified because it has fewer buttons? Or maybe because the fonts are easier to read. Or perhaps it is simplified because it [ . . . ] has hotkeys that are easier to remember. There are hundreds—possibly thousands—of ways to "simplify" a web browser compared to Microsoft Internet Explorer. Applicant's claims fail to delineate which of these "simplifications" Applicant intends to claim as his own. Thus the metes and bounds of Applicant's claim are unclear.

(12/2/2004 Office Action, Doc. No. 125-9 at 3). The patentee then canceled the claim at issue (1/27/2005 Amendment and Resp., Doc. No. 125-10 at 2, 4 ("Applicant has cancelled claim 10 and amended claim 9 such that the term 'simplified navigation interface' is not utilized.")).

During prosecution of U.S. Patent Application No. 11/266,244 ("the '244 Application"), filed November 4, 2005, the same patent examiner made similar statements regarding the term "simplified navigation interface" (6/11/2007 Office Action, Doc. No. 125-12 at 3). The patentee abandoned the application (12/19/2007 Notice of Abandonment, Doc. No. 125-13).

During prosecution of U.S. Patent Application No. 10/762,953 ("the '953 Application"), filed January 21, 2004, a different patent examiner rejected claims as indefinite because of the word "simplified" (*see* 6/20/2007 Office Action, Doc. No. 125-15 at 2). The patentee abandoned the application (Notice of Abandonment, Doc. No. 125-16).

Defendants acknowledge that during prosecution of the parent '845 Patent (the patent-in-suit is a continuation of the '845 Patent), claims including the phrase "simplified navigation interface" withstood scrutiny during administrative appeal. The parties dispute what that scrutiny entailed. The patentee had appealed an obviousness rejection to the Board of Patent Appeals and Interferences ("BPAI"). Defendants argue that although the BPAI did not rule upon any issue of indefiniteness, the BPAI expressed concern about the word "simplified":

> We find from the language in the specification that while a sister site provides simplified navigation, that *simplified navigation is not specifically defined, and we consider the language to be quite broad; i.e., simplified compared to what?* However, the claim does require that the sister site provides the simplified navigation interface for the web page.

(7/5/2005 Decision on Appeal, Doc. No. 125-18 at 9 (emphasis added)). Defendants highlight the rule that "[s]ince the exercise of authority [of the BPAI to issue new rejections] is discretionary, no inference should be drawn from a failure to exercise that discretion." MPEP § 1213.02 (8th ed., rev. 2, May 2004) (included with Defendants' briefing at Doc. No. 125-19).

Finally, Defendants emphasize a September 2, 2008 Memorandum issued to examiners at the PTO to clarify that a particular internal memo issued in 2003 "should not be interpreted as discouraging the use of 35 U.S.C. 112, second paragraph, to make appropriate rejections where there is evidence on the record that an issue of indefiniteness exists" (Doc. No. 125-26 at 1). Defendants argue that between 2003 and 2008, during which time the PTO examined the patent-in-suit, there was "confusion" at the PTO regarding whether to reject claims based on

indefiniteness (Doc. No. 125 at 2–3, 13, 15–16). Defendants also cite a precedential BPAI decision in which the BPAI, in Defendants' words, "acknowledge[ed] that it had not previously set forth the proper standard of review for [Section] 112 indefiniteness" (Doc. No. 125 at 16 (citing *Ex parte Miyazaki*, No. 2007-3300, 2008 WL 5105055, at *6 (B.P.A.I. Nov. 19, 2008))).

Defendants urge that "[t]o construe a claim term such that a product 'might infringe or not depending on its usage in changing circumstances' is the 'epitome of indefiniteness'" (Doc. No. 125 at 19 (quoting *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003); citing *Halliburton*, 514 F.3d at 1254 (regarding the term "fragile gel," finding that "an artisan would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy")))). Defendants also cite prior indefiniteness findings by this Court: *Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-CV-42, 2009 WL 1586704, at *13 (E.D. Tex. Jun. 5, 2009) ("rapidly") (Everingham, J.); *Cisco Sys., Inc. v. Telcordia Techs., Inc.*, No. 9:06-CV-160, 2007 WL 2316272, at *15 (E.D. Tex. Aug. 10, 2007) (Clark, J.) ("the predetermined number is within about a reasonable number for human capacity"), *vacated*, 590 F. Supp. 2d 828 (E.D. Tex. 2008) (vacatur approved, as part of settlement, upon consideration of public and private interest factors).

**B. Plaintiff's Response**

As a threshold matter, Plaintiff argues that Defendants failed to timely disclose their indefiniteness argument, which Plaintiff submits should have been asserted in Defendants' invalidity contentions pursuant to Local Patent Rule ("P.R.") 3-3(d) (Doc. No. 128 at 1). Plaintiff notes that the deadline for Defendants' P.R. 3-3(d) disclosures was February 1, 2013 (*see* Doc. Nos. 47, 83, 91 & 99). Plaintiff declares that "Defendants did not inform [Plaintiff] of their intent to raise an indefiniteness issue until May 20, 2013," and did not identify the term at issue until

filing their motion for summary judgment on May 24, 2013 (Doc. No. 128 at 5). Plaintiff argues it has suffered prejudice by not having an opportunity to obtain expert testimony or other evidence to rebut Defendants' indefiniteness arguments (Doc. No. 128 at 6).

As to the merits, Plaintiff responds that just as this Court and the BPAI have found in the past, "simplified navigation interface" is readily understandable, in the context of the claims and the specification, as meaning that "the navigation interface provided by the sister site [is] simplified as compared to the webpage associated with it" (Doc. No. 128 at 5; *see* Doc. No. 128 at 8–9). As to the indefiniteness rejections by examiners in related patent applications, Plaintiff responds that "the claims that were pending at the time of the Patent Office's indefiniteness rejections were radically different than those that issued in the '196 patent that are now being asserted against Defendants" (Doc. No. 128 at 9). Further, Plaintiff notes that during prosecution of the '196 Patent, the examiner cited prior art as purportedly disclosing a "simplified navigation interface," thus implicitly confirming that the term was readily understood (Doc. No. 128 at 17). Similarly, Plaintiff notes that during the original prosecution and later reexamination of the parent '845 Patent, claims containing the term "simplified navigation interface" were never rejected for indefiniteness (Doc. No. 128 at 17).

As to the BPAI decision, Plaintiff argues that because an indefinite claim cannot be analyzed for obviousness, the BPAI necessarily found that the word "simplified" did not render the claims indefinite (Doc. No. 128 at 12–13 (citing *Ex parte Adelman*, No. 2010-011767, 2012 WL 750983, at *4 (B.P.A.I. Mar. 2, 2012))). As to the inventor testimony cited by Defendants, Plaintiff responds that inventor testimony is not relevant during claim construction and, moreover, the inventors were able to "plainly articulate their understanding of the term" (Doc. No. 128 at 15).

Finally, as to the internal PTO memorandum and PTO policies cited by Defendants, Plaintiff responds that "the examiners at the USPTO had adequate guidance in their procedural documentation to properly examine claims for indefiniteness in any event" (Doc. No. 128 at 16). Plaintiff concludes by highlighting that "Defendants cite no authority to support the misguided proposition that a duly issued patent somehow loses its presumption of validity due to a purported examination policy change at the Patent Office" (Doc. No. 128 at 28).

### C. Defendants' Reply

Defendants reply by reiterating that Plaintiff's proposal either reads "simplified" out of the claims or "creates a mutating term that varies from claim to claim" (Doc. No. 133 at 1). Defendants further argue:

> On a plain reading of the claims, the public could reasonably believe that the word "simplified" should have *some* meaning and, therefore, limit the reach of the claims. Even if this meaning of "simplified" were unclear, the public also could reasonably believe, based on the prosecution history, that the claims would be evaded by a *complex* interface, e.g., one created by "prioritizing" the content displayed.

(Doc. No. 133 at 1). Defendants urge that "knowing that the interface is 'simplified as compared to the webpage associated with it' certainly does not provide any guidance for undertaking that necessary comparison" (Doc. No. 133 at 5 (emphasis omitted); *see* Doc. No. 133 at 7).

As to the BPAI decision, Defendants reply that "the BPAI provided no construction of the term 'simplified' and instead decided the appeal based on the finding that the prior art interface was *not provided by a sister site*, but instead was provided on the original webpage itself" (Doc. No. 133 at 9). Defendants further note that during prosecution of a related application, U.S. Patent Application No. 12/547,429 ("the '429 Application"), Plaintiff

"responded to a prior art invalidity rejection by arguing that a prior art interface with a reduced number of links was not 'simplified'" (Doc. No. 133 at 9).

Finally, as to whether Defendants' indefiniteness argument was timely disclosed, Defendants reply that their invalidity contentions expressly "incorporate[d] by reference and expressly reserve[d] the right to rely upon any invalidity contentions (in their entirety) . . . served in any action or proceeding involving the '196 Patent" (Doc. No. 133 at 3 (citing 8/13/2012 Invalidity Contentions in *EMG Technology, LLC v. Macy's, Inc.*, No. 6:12-CV-80, Doc. No. 133-2 at 61)). At the June 20, 2013 hearing, Defendants further submitted that in the *Dr. Pepper* case, the defendants relied upon previous invalidity contentions regarding indefiniteness that were incorporated by reference, but Plaintiff did not argue untimeliness and did not obtain any expert testimony to counter the indefiniteness arguments in *Dr. Pepper*.

## IV. DISCUSSION

Defendants urge that "the 'clear and convincing evidence' standard" associated with the presumption of validity "has no place in resolving this question of" indefiniteness, which is a question of law rather than a question of fact (Doc. No. 125 at 17). Defendants have failed to present any binding or persuasive authority for requiring less than clear and convincing evidence. On the contrary:

> PTO expertise in such matters as patent examination for statutory compliance warrants deference, for the PTO is "a qualified government agency presumed to have properly done its job." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984). The Administrative Procedure Act demands no less. And the court wisely established in *Exxon Research & Engineering Co. v. United States*, 265 F.3d 1371, 1380 (Fed. Cir. 2001) that "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee."

*Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1367 (Fed. Cir. 2012). To meet their evidentiary burden for a finding of indefiniteness, Defendants must show facts that support the invalidity conclusion by clear and convincing evidence. *Young*, 492 F.3d at 1345.

The claim language and the prosecution history demonstrate that the term "simplified" is a limitation of the claims. For example, during prosecution of the '429 Application, which Defendants submit is related to the patent-in-suit (Doc. No. 133 at 9), the patentee argued:

> Thus, the [prior art] navigation is not simplified; rather, the navigation is prioritized. This could in fact render the navigation more complicated or less simple, due to low priority navigation options being dropped to fit a screen size. Dropping navigation options makes accessing dependent or linked content more difficult when the corresponding links are dropped.

(8/2/2011 Resp. to Office Action, Doc. No. 133-7 at 6). Plaintiff does not appear to dispute that the word "simplified" is a limitation.

Rather, the dispute is whether the term "simplified" can be applied in an objective manner such that the claim scope is definite. In *Dr. Pepper*, this Court found:

> As the BPAI recognized, the navigation interface is simplified with respect to the original webpage or website for which the sister site was created. . . . Defendants argue that, even given this frame of reference, the term is subjective and one user's notion of "simplified" may be different from another user's. However, the claims themselves provide the requisite guidance for determining whether a related interface for a webpage or website is a "simplified navigation interface."

*Dr. Pepper* at 15. The Court found *Datamize* distinguishable for this reason. *Id.* at 15–16 (discussing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005)).

Defendants' core argument is that *Dr. Pepper* erred by relying upon other claim language to "provide the requisite guidance for determining whether a related interface for a webpage or website is a 'simplified navigation interface.'" *Dr. Pepper* at 15. Defendants urge that this finding in *Dr. Pepper* impermissibly reads the word "simplified" out of the claims (Doc. No. 125

at 27 (citing *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378 (Fed. Cir. 2013) ("The claim language thus only requires isolation within a particular stage. Requiring 'isolation' between every two points in the system would read the terms 'stage' or 'converter' out of the claims."))).

In general, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006).

The Court nonetheless conducts an independent evaluation during claim construction proceedings. *See, e.g., Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589–90 (E.D. Tex. 2002); *Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*, 401 F. Supp. 2d 692, 697 (E.D. Tex. 2005); *Negotiated Data Solutions, Inc. v. Apple, Inc.*, No. 2:11-CV-390, 2012 WL 6494240, at *5 (E.D. Tex. Dec. 13, 2012). In the interest of conducting an independent analysis of the issues presented by the parties here in the above-captioned case, and because the BPAI decision was not explicit regarding whether the term "simplified navigation interface" is amenable to construction, the present Memorandum Opinion and Order analyzes the indefiniteness issue without deference to the statements of the BPAI. *See, e.g., Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, No. 2011-1223, 2013 WL 2991060, at *9 (Fed. Cir. June 18, 2013) ("The initial determinations by the PTO in determining to grant the application are entitled to no deference . . . . Rather, we treat the issued patent as having a presumption of validity that must be overcome by clear and convincing evidence. No decision of the Supreme Court or this court has ever suggested that there is an added burden to overcome PTO findings in district court

infringement proceedings . . . . Neither are we persuaded that the presence or absence of PTO findings on particular issues affects the basic presumption of validity.").

Defendants have emphasized certain testimony by the named inventors. Named inventor Albert Long testified that "[o]f course there are many ways to simplify anything, yes," and that simplifying a web page would depend on its content (5/11/2013 Long Dep., Doc. No. 125-22 at 232:3–8; *see* 5/11/2013 Long Dep., Doc. No. 125-22 at 125:23–126:17 ("Q. And it may depend on the specific Web page, I guess? A. Yeah.")). Named inventor Elliot Gottfurcht suggested that fewer links and mouse-less navigation could simplify a page (12/15/2009 E. Gottfurcht Dep., Doc. No. 125-23 at 52:3–54:4). Named inventor Grant Gottfurcht stated that "a simplified navigation page" is one that would be "[s]impler than the average search engine website like Yahoo or AOL, I guess, just a simplified, easier way to navigate a page" (12/16/2009 G. Gottfurcht Dep., Doc. No. 125-24 at 61:17–25). But even assuming for the sake of argument that the inventors agreed that "simplified" is vague and subjective, inventor testimony is extrinsic evidence and is generally of limited weight during claim construction. *See Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346–47 (Fed. Cir. 2008).

Instead, the proper focus is on the intrinsic evidence. "[W]hen faced with a purely subjective phrase . . . a court must determine whether the patent's specification supplies some standard for measuring the scope of the phrase." *Datamize, LLC*, 417 F.3d at 1351. Further, in general, a claim term "cannot be interpreted differently in different claims because claim terms must be interpreted consistently." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[C]laim terms

are normally used consistently throughout the patent."). Claim 1 is representative and recites (emphasis added)[2]:

> 1. A method of navigating the Internet, comprising:
> displaying on-line content accessed via the Internet, the on-line content reformatted from a webpage in a hypertext markup language (HTML) format into an extensible markup language (XML) format to generate a sister site, the *sister site including a portion or a whole of content of the web page reformatted to be displayed and navigable* through a *simplified navigation interface* on any one of a television, web appliance, console device, handheld device, wireless device or cellular phone, the *simplified navigation interface displayed in a form of a two-dimensional layer of cells from a plurality of layers and a plurality of cells*, *the two-dimensional layer in a form of a navigation matrix*, *each cell is a division of a screen and exclusive to a separate single navigation option associated with a specific unique input*, the on-line content formatted to be displayed in one or more of the plurality of cells and formatted to be selected for navigation by one or more of the unique inputs, navigation options to change between layers of the *simplified navigation interface* from general to more specific in each deeper layer;
> displaying a hyperlink on the sister site to navigate to the web page, or displaying a hyperlink on the web page to navigate to the sister site;
> receiving a user selection of one of the navigation options;
> forwarding the selected navigation option across the internet to a server providing the *simplified navigation interface*;
> receiving a next deeper navigation layer of the *simplified navigation interface* corresponding to the selected navigation option; and
> manipulating a region of the screen for viewing and zooming and/or scrolling of the displayed on-line content.

Claim 1 thus recites several limitations relevant to a "simplified navigation interface": (1) "sister site including a portion or a whole of content of the web page reformatted to be displayed and navigable"; (2) "displayed in a form of a two-dimensional layer of cells," (3) "from a plurality of layers and a plurality of cells," (4) "the two-dimensional layer in a form of a navigation matrix," and (5) "each cell is a division of a screen and exclusive to a separate single navigation option associated with a specific unique input."

---

[2] On September 6, 2011, the U.S. Patent and Trademark Office issued an Inter Partes Reexamination Certificate that contained amendments to Claims 1, 9, 25, and 58 of the '196 Patent (*see* Doc. No. 1-3). All references in this order to these claims are references to the amended claims in the reexamination certificate.

In *Datamize*, "[s]ome statements indicate[d] particular aspects of the screen that might affect whether the screen is 'aesthetically pleasing': button styles, sizes, and placements, window borders, color combinations, and type fonts. There [wa]s no indication, however, other than by referring to 'the considered opinions of aesthetic design specialists, database specialists, and academic studies on public access kiosk systems and user preferences and problems,' how to determine what button styles, sizes, and placements, for example, are 'aesthetically pleasing.'" *Datamize, LLC*, 417 F.3d at 1352.

The case of *Hearing Components, Inc. v. Shure Inc.* is more analogous to the present case. 600 F.3d 1357 (Fed. Cir. 2010). In *Hearing Components*, the Federal Circuit reversed a finding of indefiniteness as to "readily installed and replaced by a user" where the specification explained that "[the guard] is simple to install, easy to remove, and convenient to replace, even for older persons. The guard is inexpensive and requires no tools for installation or removal." *Id.* at 1367. The court found that this disclosure provided "some standard for measuring" the degree of "readily." *Id.* at 1368.

As in *Hearing Components*, the specification of the '196 Patent provides guidance regarding the term at issue:

> A wide-area network (WAN) 10, such as the Internet, couples together a plurality of communication nodes. Some nodes, such as node 12, may be a standard prior art PC executing any conventional web browser. Alternatively, node 12 might be a set top box and television, or an internet appliance, or a wireless device, such as a web-enabled cell phone.

'196 Patent at 2:32–38.

> FIG. 8 is a diagram of the display of a graphical user interface of one embodiment of the invention. *The screen is divided into a plurality of cells*. In this embodiment, there are fifteen cells that represent navigation options and one messaging cell for displaying messages from the server, the progress or status bar, and a title block. The cells can further be subdivided between the digit keys 1-9

keys which, in this embodiment, represent the primary set of navigation options and the keys designated by letters A-C which represent secondary navigation options and *, 0, and # keys that may be additional navigation options or provide specialized functions. For example, the * key may return the user to the server home site, thereby leaving matrix navigation. The ABC cells will typically hold advertising, and selecting one of those cells will generate a matrix layer with primary navigation cells directed to that advertiser or the product line being advertised. *While the interface is designed to be fully accessible with minimal key strokes from a key pad*, it is also within the scope and contemplation of the invention to permit selection with a mouse or other pointer device.

FIGS. 9*a-d* are example sister site matrix pages. In FIG. 9*a*, an advertising cell 900 is the focus region of the displayed image. Ten advertisements are displayed within the regions. The first advertisement 902 is highlighted. From this matrix page, the * returns a user to the amazon.com home page. The # reveals the contents of a user's shopping cart. In FIG. 9*b*, the contents of the focus window have been enlarged (zoomed) such that only four advertisements are displayed in ad cell 900. The no [sic] links/advertisements are highlighted. In FIG. 9*c*, advertisement 902 is again highlighted. This may occur, for example, by a user pressing a scroll key from FIG. 9*b*. In FIG. 9*d*, a user has pressed a scroll key several times from FIG. 9*c*. Thus, advertisement 902 has scrolled out of view and advertisement 904 is highlighted. While in this example, ten advertisements were present, the number of links within such a cell may be arbitrarily large. In the shown embodiment, scrolling through the links in the focus cell and scaling the focus cell content does not effect [sic] the user's view of the remaining cells.

FIGS. 10*a-g* are a series of matrix layers displayed during an exemplary navigation using one embodiment of the invention. In this example, navigation begins at the Shopping and Products matrix layer and [sic] shown in FIG. 10*a*. A selection of 5 on the 10*a* matrix layer yields an Electronics matrix layer shown in FIG. 10*b*.

Selecting 1 on the keypad when the matrix layer of 10*b* is displayed yields the Audio matrix layer of FIG. 10*c*. By selecting an 8 on the keypad when 10*c* is displayed, the system displays a Receivers matrix layer of FIG. 10*d*, which breaks down receivers into price categories and also provides the option of navigating, in this embodiment, into Consumer Reports industry reports related to receivers. Notably, in FIG. 10*d*, the number of primary navigation options is reduced to 4. Thus, *it is not necessary that all layers of the matrix have the same number of cells, nor is it required that all cells have the same size*. A user can select Stereo Only by pressing 1 on the keypad, which yields a stereo only matrix layer shown in FIG. 10*e*.

In one embodiment of the invention, the products are ordered based on some ranking system, such as Consumer Reports. Thus, for example, in FIG. 10*e*,

Technics received the highest ranking of receivers in the selected category from Consumer Reports. It is expected that for any particular product class, potential purchasers are likely to only be interested in the top several products within that class, not for example, the 15th best receiver in the $150-$290 range. However, it is within the scope and contemplation of the invention to permit a "more" option which allows a user to get a set of the next most highly ranked products and possibly unranked products as well. It is expected that supplying product options in a user-friendly ranked order will encourage users to be more willing to conduct e-commerce.

By selecting a 1 on the keypad when matrix layer 10*e* is displayed, a user reaches the matrix layer of FIG. 10*f*, as well as reaching the maximum depth for that navigation path. Thus, pressing 1 on the keypad in response to matrix layer 10*f* does not move the user deeper into the multi-dimensional matrix, and content is displayed in cell 1 indicating the model, price, picture, and possibly other information about the Technics product. Cell 1 is also larger than the other cells.

Other navigation options are provided in additional matrix cells surrounding cell 1 and its content. The additional cells represent navigation paths that have not reached their maximum depth. For example, by pressing a 3, one would get to a features of the Technics product content layer. Such screen would display features of the Technics system. The various navigation paths typically have a maximum depth at which content is displayed. However, reaching the maximum depth of a particular navigation path does not indicate that another navigation path may not have yet a deeper matrix layer. For example, while the maximum depth of the navigation path corresponded to cell 1 has been reach in FIG. 10*f*, selecting a 9 on the keypad will move a user to a Technics purchase matrix layer, shown in FIG. 10*g*. By selecting digits on the keypad, a user can move between fields to fill out a purchase form which, as discussed above, is one example of a matrix layer including composition cells. In some embodiments, the form can be filled in using keyboard input. In other embodiments, the speech to text capabilities of the terminal will permit the user to fill out the electronic purchase form orally.

*Id.* at 7:65–9:31 (emphasis added).

In some cases, the advertising cells are merged as a single cell showing a single advertisement and permitting navigation to only a single matrix layer therefrom. In one embodiment, the background can be an advertisement. This is also shown in FIGS. 12*a* and *b*. Significantly, the advertisement can be targeted by modifying the ad responsive to the apparent navigation path of the user. This leaves the potential of showing the user an advertisement for a product or service more likely to be of interest. For example, when a user selects Electronics in the example of FIGS. 10*a-g*, the next screen may have as background an advertisement, e.g. for Circuit City.

> FIG. 13 shows the e-mail creation screen for one embodiment of the invention. This would be reached by pressing 3 on the keypad when the matrix layer of FIG. 9*d* is displayed. Again, all e-mail functions other than actually entering the text and the address can be performed using the *simple interface with numerical digits and the letters ABC* corresponding to inbox, the outbox, and the sent features of standard e-mail, respectively.

*Id.* at 9:51–10:3 (emphasis added).

Reading these disclosures in light of the pertinent claim limitations noted above, a person of ordinary skill in the art would find sufficient objective anchors in the claims and the specification for understanding the use of a two-dimensional matrix and the simplification of a navigation interface as recited by the claims. Cases like *Datamize* are thus distinguishable because here the claims and the specification provide proper context for the term "simplified navigation interface." *See Hearing Components*, 600 F.3d at 1368. The Court therefore rejects Defendants' argument that the disputed term is "insolubly ambiguous." *Exxon*, 265 F.3d at 1375 ("If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite. If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."). Defendants' motion for summary judgment of invalidity for indefiniteness is accordingly hereby denied.

Because Defendants' motion for summary judgment is denied on the merits, the Court need not resolve whether Defendants properly complied with the disclosure requirements of P.R. 3-3(d).

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment of invalidity for indefiniteness (Doc. No. 125) is **DENIED**.

**It is SO ORDERED.**

**SIGNED this 11th day of July, 2013.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE